## TRIVISON, Tee v STEINER

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided Oct 12, 1931

Robert A. Good, Cleveland, for Trivision.

P. Jerome Pasch and Cannon, Spieth, Taggart, Spring, and Annat, Cleveland, for Steiner.

ute on the 21st day of July, for a balance sheet that is in the record shows that its capital amounted to $19,000, and it had been depleted to the extent of only $2,900, and that the statement of assets and liabilities otherwise balanced, so that there was an abundance of assets to meet the obligations as appeared in the statement in evidence in this case, at the time of this transaction.

Under the Ohio statute, however, the probabilities are that The Advance Printing and Label Company was insolvent for, we believe, that the Ohio statute provides that when a debtor cannot meet his obligations as they mature, he is insolvent and can be thrown into insolvency in the state courts; and, it is claimed, that this theory of the law obtains in this action, and that Steiner knew that The Advance Printing and Label Company was insolvent and unable to meet its obligations at the time that this transaction took place, and therefore it was a fraud on creditors and the beneficiary of that fraud could not avail himself of the proceeds obtained from this check.

So far as the bankruptcy statute is concerned, The Advance Printing and Label Company was not declared a bankrupt until November 24th, 1928, more than four months after this transaction had been completed, unless one regards the transaction as only arising when the check was delivered, and that seems to have been the theory of the plaintiff in the court below, the plaintiff in error in this court; that this check and the proceeds of it belonged to The Advance Printing and Label Company until the transfer was actually made on the 5th day of November, and that would be in fraud of creditors, both under the United States bankruptcy statute and under the State of Ohio insolvency laws.

Now I presume there is no question better settled than that when a person who knows a concern is insolvent and actually advances money to help along the transaction, even though it operates as a hypodermic, to use the same term which was used in the argument, to instill new life and vigor into a dying concern, that notwithstanding this fact if he actually advanced the money and took security upon the property, even knowing that it was insolvent, the effect would be to enhance the estate to the extent of such money advanced and, therefore, the universal holdings are that to the extent of the money that was advanced, which was secured by a mortgage lien upon the property, the claimant to such money would have a valid priority in spite of an insolvency in the State Court or in the United States Bankruptcy Court.

VICKERY, J.

Now from the state of the record as to the evidence, it appears that, on the books at least, the Company was not insolvent within the meaning of the bankruptcy stat-

Now applying that doctrine to the instant case what do we find? Why, that here was a concern which was not insolvent prior to the 21st day of July. It had not been declared a bankrupt. It had not been found incapable of carrying on business, but it was doing business. Here was a valuable contract which it sought to obtain and did obtain, but it could only obtain it by performing a condition precedent, and that was by giving a bond, and the only way in which it could give a bond such as the Board of Elections required, was by putting up five thousand dollars in cash in the bank to remain there until the contract was completed and the bond discharged. The Advance Printing and Label Company being unable to comply with this requirement, sought means whereby it could get assistance to get this contract. Now at the time the contract was made, and it was a part of the negotiations, Steiner was brought into the matter, and he agreed in writing, and The Advance Printing and Label Company was a signatory, that he would perform all things which would enable The Advance Printing and Label Company to enter into this contract, whereby The Board of Elections were to pay something over twenty thousand dollars, all parties supposing that there would be a profit out of the contract, which profit would redound to the benefit of The Advance Printing and Label Company, but in order to enable The Advance Printing and Label Company to obtain this contract, Steiner had to be protected. In other words, he loaned his credit in order that the whole contract could be carried out, and for that credit and for the use of his money and his advancing money for the material and labor to be used in the execution of this contract this written assignment was made to him, not the assignment of the contract, but the proceeds of the contract were assigned to him. In other words, the proceeds were mortgaged to him for money he actually advanced, as well as credit advanced for the purpose, and only for the purpose, of carrying out this contract; and so after the Board of Elections had agreed to this and promised to pay Steiner the money, the proceeds of this contract belonged to him, and never were the property of The Advance Printing and Label Company. The only interest The Advance Printing and Label Company had in it was a share of the profits after all the expenses and all the other things mentioned in the contract were taken out and cared for by Steiner. Steiner, of course, was to receive back his five thousand dollars which he deposited in the bank. That, I believe, was done.

The record in this case shows, or at least it does not show anything to the contrary, that there was no profit in this contract, but instead that a loss was incurred; that Steiner had paid all that he had agreed to pay; that he had borne the burden of providing the material and labor for the carrying out of this contract and that he was entitled to and could have compelled the Board of Elections to have paid him. And had the Board of Elections paid this money to The Advance Printing and Label Company and it had refused to pay the money over to Steiner, Steiner would undoubtedly have had a good cause of action against the Board of Elections for the money, and the act of turning the check over when it was made payable to the Printing Company was only in accordance with the contract, and only an evidence of honesty and good faith. So whatever title Steiner received to the proceeds of this contract was received on the 21st of July at the time of the assignment of the proceeds of this contract, and that assignment was agreed to by the Board of Elections.

With that in mind, we have the case then, so far as the Ohio Insolvency Law is concerned, of where a man, even if he knows that the debtor was insolvent, advances money which enhances and enriches the estate to the extent of the contract in this case—and no charge is made in this suit that all the labor and material which was furnished in this contract had not been taken care of by Steiner—and so he would be entitled to recover.

Now so far as the United States Bankruptcy Law is concerned, the only chance to recover would be the Five or Six Thousand Dollars pre-existing debt which was owed by the Advance Printing and Label Company to Steiner, which was agreed to be paid for in this contract and which, I believe, was paid by Steiner out of the proceeds of this check. That undoubtedly would have been a preference under the United States Bankruptcy statute, had the bankruptcy taken place within four months from the date of the assignment of this payment of the proceeds of this contract. But this took place on the 21st of July and the petition in bankruptcy was not filed until the 24th of November, and the Advance Printing and Label Company had not closed its doors but was doing business to all intents and purposes at least prior to the 6th of November, and there is nothing in the record to show that it could not pay its debts even under the insolvency laws of Ohio prior to that time. Dating the bankruptcy from the 24th, there would be

four months and three days from the time this money was turned over, for the proceeds of the contract were assigned to and became the property of Steiner at that time, and if it is three days or one day over the four months, the bankruptcy statute creating a preference does not apply. Consequently on either theory, that of the Ohio Insolvency Law or of the Bankruptcy Statute, the plaintiff was not entitled to recover; and this appearing at the time the plaintiff rested no evidence in defense was needed, because it then became a matter of law and the court could and should have directed a verdict as it did.

Now it is claimed in this law suit that assuming that theory of the law to be correct, yet it is said that this Printing Company was a corporation and that the corporation is managed by a Board of Directors, and that there was nothing in the record to show that the Board of Directors ever authorized the transfer of the proceeds of this contract to Steiner, and that if there was a sort of partnership relation between Steiner and the Advance Printing and Label Company, it would be unlawful for the reason that a corporation could not enter into a partnership.

Now let us analyze those two propositions, the last one first. There is abundant authority, in fact there is a decision in Ohio of long ago, where it was held that a corporation could enter into a partnership either with other corporations or with individuals. The court refused an accounting in the partnership in the case I referred to for the reason that it was formed for an unlawful purpose, but held that for a legal purpose a corporation or several corporations, if their charters did not prevent, could go into a partnership to carry on a common enterprise and so could corporations with private individuals. But that question does not become material.

The other question, however, is of more moment, and that is that a corporation speaks only through its board of directors. It is claimed that the man who made all these contracts and signed the checks and did everything else was John Kohl and that therefore the assignment itself was invalid, and that Steiner having received the proceeds of the check, he holds it simply as trustee for the benefit of the creditors of the concern.

Now it appears from the record and argument that Kohl was virtually, if not actually, the sole stockholder, was president and general manager of this corporation and whatever he said went. Now it would be rather singular if Kohl had the right to make this contract with the Board of Elections whereby the estate was enriched and that only through the aid of Steiner who financed it, that is, that the corporation could receive the benefit of a contract which was made by its president or general manager and then escape its responsibilities by reason of the fact that the board of directors did not properly pass the resolution.

We do not put much stock in such an argument. If a principal receives the benefit from a contract through the agency of an individual, such principal cannot keep the benefits and repudiate the liabilities. This court has held that many times and it has been so often decided in Ohio and elsewhere that it becomes quite a familiar doctrine. We think that under this record Kohl was the sole operating factor in the Advance Printing and Label Company and that he made all contracts and did things as he chose, and that he made the contract with the Board of Elections. The Board of Directors did not make it, and if he had the right to make the contract for the benefit of the directors he had the right to assign it for the benefit of the Board of Directors of the Company to the man who made the carrying out the contract possible. The only right that the trustee in bankruptcy would have, would be to recover a share of the profits that were coming to Kohl or his corporation as provided for in the contract. If it had shown a profit which money was included in the check, then the trustee in bankruptcy would be entitled to recover that much, but so far as the record shows there was no such profit. On the contrary, it appears that there was not only no profit, but a loss was sustained; and simply because it results in making more obligations for the bankrupt company does not militate against the law in the least, nor is the party who enabled the company to carry out the contract through his financing it, any less entitled to the proceeds of the check.

After reviewing the whole record we can come to no other conclusion than that the court below was right in directing a verdict, for there is nothing to go to the jury, and the judgment therefore should be and must be affirmed.

Judgment affirmed.

LEVINE, PJ, and WEYGANDT, J, concur.